**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FRANCISCO JAVIER MARTINEZ ANGEL,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

Plaintiff,

    v.

CORE SCAFFOLD SYSTEMS INC.,
M.D. SCAFFOLDING, INC.,
K & V GARCIA CORP., JOHN DOE
CORPORATIONS 1-50,
VALON PILKU, and VICENTE GARCIA,

Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, FRANCISCO JAVIER MARTINEZ ANGEL (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this class and collective action Complaint against CORE SCAFFOLD SYSTEMS INC., M.D. SCAFFOLDING INC., K & V GARCIA, JOHN DOE CORPORATIONS 1-50 ("Corporate Defendants" or "Defendants"), VALON PILKU and VICENTE GARCIA (collectively, "Individual Defendants"; and, together with Corporate Defendants, "Defendants"), and states as follows:

<u>**INTRODUCTION**</u>

1.    Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants:

(1) unpaid wages, due to a fixed salary; (2) unpaid wages, including unpaid overtime, due to time shaving; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including unpaid overtime wages, due to a fixed salary; (2) unpaid wages, including overtime, due to time shaving; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

3.      Plaintiff alleges on behalf of himself, and others similarly situated that Defendants willfully filed fraudulent information returns regarding Plaintiff and Class members with the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7434.

4.      Plaintiff further alleges on behalf of himself, and others similarly situated, that Defendants breached their contract with Plaintiff and Class members by failing to pay employer payroll taxes for Plaintiff and Class members, as required by the Federal Insurance Contribution Act ("FICA").

5.      Plaintiff also alleges that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class members.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

8.      Plaintiff, FRANCISCO JAVIER MARTINEZ ANGEL, is a resident of Queens County, New York.

9.      Individual Defendants own and operate the Corporate Defendants in this matter as a single integrated enterprise. Corporate Defendants' scaffolding/construction companies operate exclusively in New York State. Although Defendants' Companies have different names, they effectively operate as one single company, under the common control of the Individual Defendants.

10.      At all relevant times, Defendants CORE SCAFFOLD SYSTEMS INC., M.D. SCAFFOLDING INC., K & V GARCIA, and JOHN DOE CORPORATIONS 1-50 have operated as a single integrated enterprise under the common control of the Individual Defendants. Specifically, the Companies engage in related activities, share common ownership, and have a common business purpose.

   a. Defendants' Companies CORE SCAFFOLD SYSTEMS INC., M.D. SCAFFOLDING INC., K & V GARCIA, and JOHN DOE CORPORATIONS 1-50 are engaged in the same business of providing scaffolding services to buildings/construction sites throughout New York.

   b. Defendants have one streamlined practice for interviewing and hiring employees, e.g., once an employee is hired by any of Defendants' Companies, he or she is thereafter employed by all of Defendants' Companies. Plaintiff himself was hired to work at Defendants' CORE SCAFFOLD SYSTEMS INC., but nevertheless was also effectively employed by M.D. SCAFFOLDING INC., K & V GARCIA, and JOHN DOE CORPORATIONS 1-50, and received paychecks from these companies.

c.  Upon hire, employees of Defendants' Companies complete one set of forms for purposes of Human Resources and onboarding, including, but not limited to, Employment Verification forms, tax forms, primary contact forms, etc.

d.  Employees, supervisors, managers, equipment and tools are used among all of Defendants' Companies and interchanged, on an as needed basis.

i.  Plaintiff and Class members had the same managers, supervisors and foreman, regardless of which site they were assigned to work or which of Defendants' Companies was listed on their pay stubs. For example, Plaintiff's supervisor was always Individual Defendant, Vicente Garcia, and the foremen were Gregorio [LNU], Adolfo [LNU], and Alexis [LNU].

ii.  Plaintiff and Class members were assigned by the foreman to different sites daily without distinction among Defendants' Companies.

iii.  Plaintiff and Class members used the same tools, vehicles and equipment at each site they were assigned to, without distinction among Defendants' Companies. For example, regardless of which site to which Plaintiff was assigned, he always used the same hardhat, harness, tools, and other scaffolding equipment.

iv.  Plaintiff performed the same duties at each site he was assigned to by the foreman, without distinction among Defendants' Companies. Plaintiff always held the title of laborer and his duties included building scaffolds, loading and unloading trucks, and assisting on projects as needed.

e.   All of the Companies share common pay practices with regard to employees and all employees either report to a central location to receive wages from Defendants' Companies, or are paid on-site by the foreman, without distinction among Defendants' Companies. When Plaintiff was required to report to Defendants' central office to receive his wages, Plaintiff always reported to 500 Dekalb Avenue, 3rd Floor, Brooklyn, NY 11205, regardless of which of Defendants' Companies was listed as issuing the paycheck.

f.   The Companies share a common compensation scheme, whereby prior to in or around September 2020, employees were improperly paid on a fixed salary basis; thereafter all Corporate Defendants implemented the same time clock system and employees were subjected to Defendants' time shaving and rounding practices.

   i.   When Plaintiff was compensated on a fixed salary basis, he received one weekly payment of wages, regardless of which site he was assigned to or which of Defendants' Companies was overseeing the project.

   ii.   After the implementation of the time clock system, employees used the same phone app to clock in and out, without distinction among Defendants' Companies.

   iii.   After in or around September 2020, Defendants compensated Plaintiff and Class members by check. At times, Plaintiff was issued multiple checks, issued in the name of Defendants' different Companies, regardless of which site was working at, or that he was working under the same foreman. These checks show overlapping dates, regardless of

which of Defendants' Companies' names is listed on the check. *See*

**Exhibit A - Samples of Plaintiff's Paychecks Issued by Defendants'**

**Different Companies**.

iv.   Defendants' Companies list the same hourly pay rate on Plaintiff's pay

stubs, regardless of which of Defendants' Companies issued the

paycheck. *See* **Exhibit A**.

11.   During all relevant times, Plaintiff performed work for Defendants' Core Scaffold

Systems, Inc., and Defendants compensated Plaintiff through their different Companies. Because

of Defendants' practices, all of the Companies and JOHN DOE CORPORATIONS are

appropriately named in this Class and Collective Action Complaint through the relevant Corporate

Defendants described above. Because all of the Companies and JOHN DOE CORPORATIONS

share identical illegal wage and hour policies, the Companies, JOHN DOE CORPORATIONS and

the Individual Defendants are properly named because of outstanding liability to FLSA Collective

Plaintiffs and Class members that Plaintiff seeks to represent.

12.   Defendants operate the Companies through the following Corporate Defendants:

a.   Corporate Defendant CORE SCAFFOLD SYSTEMS INC. is a domestic

business corporation organized under the laws of New York, with an address

for service of process and a chief executive office located at c/o Valon Pilku,

417 Myrtle Avenue, Suite 14, Brooklyn, New York 11205.

b.   M.D. SCAFFOLDING INC. is a domestic business corporation organized

under the laws of New York, with an address for service of process located at

c/o Diego Gamboa, 1290 Croton Loop, Apt. 15H, Brooklyn, New York 11239.

c.  K & V GARCIA is a domestic business corporation organized under the laws of New York, with an address for service of process located at c/o The Corporation, 74-13 Woodside Avenue, Woodside, New York 11373.

13.  Individual Defendant VALON PILKU is the co-founder and owner of Corporate Defendants. VALON PILKU exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. VALON PILKU frequently visits the Companies. VALON PILKU exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Companies may complain to VALON PILKU directly regarding any of the terms of their employment, and VALON PILKU would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. VALON PILKU exercised functional control over the business and financial operations of all Corporate Defendants. VALON PILKU had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

14.  Individual Defendant VICENTE GARCIA is an owner of Corporate Defendants. VICENTE GARCIA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. VICENTE GARCIA frequently visits the Companies. VICENTE GARCIA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those

of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Companies may complain to VICENTE GARCIA directly regarding any of the terms of their employment, and VICENTE GARCIA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. VICENTE GARCIA exercised functional control over the business and financial operations of all Corporate Defendants. VICENTE GARCIA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

15.     Defendants JOHN DOE CORPORATIONS 1-50 are all scaffolding/construction companies wholly owned by Individual Defendants and companies unknown to Plaintiff at this time. Each JOHN DOE CORPORATION is an entity operated by Individual Defendants which serves as the nominal employer for Individual Defendants' employees. All employees working for Individual Defendants, regardless of the nominal corporate entity to which they are assigned, are all subject to a common payroll, Human Resources, and executive management team operated by Individual Defendants.

16.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA.

17.     At all relevant times, the work performed by Plaintiff FLSA Collective Plaintiffs, and Class members was directly essential to the businesses operated by Defendants.

18.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including scaffolders, laborers, and construction workers among others, employed by Defendants on or after the date that is six years before parties' tolling agreement on July 20, 2022, as defined herein ("FLSA Collective Plaintiffs"). *See* **Exhibit B - Parties Tolling Agreement.**

20.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs: (i) unpaid wages, including unpaid overtime wages, due to due to a fixed salary; (ii) unpaid wages, including unpaid overtime, due to time shaving; (iii) liquidated damages; and (iv) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including

scaffolders, laborers, and construction workers, among others employed by Defendants on or after the date that is six years before parties' tolling agreement executed on July 20, 2022, as defined herein (the "Class Period"). *See* **Exhibit B.**

23.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty members of the Class.

25.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) unpaid wages, including unpaid overtime wages due to a fixed salary; (ii) unpaid wages, including overtime wages, due to time shaving; (iii) failing to provide proper wage statements per requirements of NYLL; and (iv) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

26.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

27.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

29.     Defendants and other employers throughout the state violate NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

30.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

d.  Whether Defendants properly notified Plaintiff and Class members of their hourly rates;

e.  Whether Defendants properly compensated Plaintiff and Class members for all hours worked, including overtime hours;

f.  Whether Defendants compensated Plaintiff and Class members on an illegal fixed salary basis;

g.   Whether Defendants caused time shaving by not paying Plaintiff and Class members for all actual hours worked;

h.   Whether Defendants provided wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL; and

i.   Whether Defendants provided proper wage statements to employees as required under NYLL.

**STATEMENT OF FACTS**

31.   On or about March 2018, Plaintiff FRANCISCO JAVIER MARTINEZ ANGEL was hired by Defendants to work as a laborer for Defendants' CORE SCAFFOLD SYSTEMS INC. During his employment Plaintiff was assigned to perform work for Defendants at different sites in throughout NYC, primarily in Manhattan. From in or around March 2020 to September 2020, Plaintiff was on leave due to covid but was not compensated for any of this time. Plaintiff was employed by Defendants until on February 16, 2022, when he was terminated.

32.   During the entire duration of his employment with Defendants, Plaintiff held the title of laborer. His duties included creating and building scaffolding, loading and unloading trucks and assisting on projects as needed. On a daily basis, Plaintiff was scheduled by his foreman to work at different job sites primarily in Manhattan, for scaffolding projects. At each site, Plaintiff had the same foreman and was assigned to a work group with other scaffolding employees and laborers. Plaintiff's team was generally the same, regardless of which site he was assigned to. FLSA Collective Plaintiffs and Class members were similarly assigned on a daily basis to work at different job sites.

33.     During the entire duration of his employment, Plaintiff was scheduled to work as follows: Mondays through Fridays, from 7:00 a.m. to 4:00 p.m., for a total of forty-five hours each week. Additionally, Plaintiff was regularly required to work a sixth day on Saturdays, also from 7:00 a.m. to 4:00 p.m. FLSA Collective Plaintiffs and Class members were similarly scheduled to work more than forty hours each week.

34.     Further, throughout the duration of Plaintiff's employment, in spite of his regular schedule, Plaintiff was always required to stay at least ten to fifteen minutes beyond his scheduled end time, and, approximately twice per week, Plaintiff was required to continue working between two to three hours beyond his scheduled end time. This resulted in Plaintiff working significant overtime hours. However, Plaintiff was never compensated for the additional hours, including overtime hours, that he worked beyond his scheduled shift. Similarly, FLSA Collective Plaintiffs and Class members were regularly required to work significant hours beyond their regular scheduled shifts, but were not compensated for these additional hours, including overtime hours.

35.     From the start of Plaintiff's employment until in or about September 2020, Plaintiff was compensated in cash on a weekly basis without a pay stub at a fixed rate of one hundred forty dollars per day, regardless of how many hours he worked each day. FLSA Collective Plaintiffs and Class members were similarly compensated weekly in cash without pay stubs at a fixed rate regardless of how many hours they worked each day. There was never an agreement by Plaintiff, FLSA Collective Plaintiffs or Class members that this fixed salary scheme would cover overtime hours.

36.     From in or around September 2020, Defendants began to compensate Plaintiff by check. At all times, Plaintiff either reported to Defendants' office located at 500 Dekalb Avenue to pick up his wages or was paid on site by the foreman. When Plaintiff was paid by check, these

checks were always issued in the name of one of Defendants' Companies, CORE SCAFFOLD SYSTEMS INC., M.D. SCAFFOLDING INC., or K & V GARCIA, with the same hourly rate listed on each. Plaintiff had no idea why the company name on the check changed from time to time, as there was no correlation between the issuing company and the work Plaintiff performed or the site to which he was assigned to work. *See* **Exhibit A.** Defendants' compensation scheme failed to compensate Plaintiff for all hours worked, including those worked over forty in a work week. FLSA Collective Plaintiffs, and Class members were similarly subjected to this same compensation scheme and not compensated for all hours worked, including those over forty in a workweek.

37.     As a result of Defendants' paying Plaintiff, FLSA Collective Plaintiffs, and Class members in cash prior to September 2020, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs and Class members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs and Class members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least five thousand dollars to Plaintiff, FLSA Collective Plaintiffs, and Class members for each fraudulent filing, which would have to be at least once a year.

38.     In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff, FLSA Collective Plaintiffs and Class members to pay the employer's share of Social Security and Medicare taxes for each employee.

39.     Defendants also unjustly enriched themselves at the expense of Plaintiff, FLSA Collective Plaintiffs and Class members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff, FLSA Collective Plaintiffs and Class members.

40.     As a result, Plaintiff, FLSA Collective Plaintiffs and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

41.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff, FLSA Collective Plaintiffs and Class members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

42.     Defendants are liable to Plaintiff, FLSA Collective Plaintiffs and Class members for failing to pay FICA taxes for the wages earned by Plaintiff, FLSA Collective Plaintiffs and Class members.

43.     In or around September 2020, when Defendants began compensating Plaintiff by check Plaintiff was also required to clock in/out using an app called Fingercheck on his phone. Plaintiff clocked in using the same app, regardless of which site his foreman assigned him to on a particular day. Regardless of the hours for which Plaintiff clocked in/out, due to a policy of time shaving, Defendants always paid Plaintiff to the lowest half hour. For example, if Plaintiff worked until 4:28 p.m., and clocked out at that time, Defendants only pay him until 4:00 p.m. for that day; additionally, if Plaintiff worked until 4:35 p.m., and clocked out at that time, Defendants would only pay him until 4:30 p.m. FLSA Collective Plaintiffs and Class members were similarly required to clock in and out for their shifts using the same phone app, regardless to which site they

worked, and Defendants similarly time shaved FLSA Collective Plaintiffs and Class members by rounding down their clock out times to the lowest half hour.

44.     After Defendants began compensating Plaintiff by check, Plaintiff would often receive multiple checks covering the same pay period, with his hours worked split among each check. These checks were issued by different companies all owned by Defendants, and each with the same hourly rate listed. This occurred, notwithstanding that Plaintiff had only applied and had been hired to work only at Defendants' Core Scaffolding Systems, Inc. FLSA Collective Plaintiffs and Class members were similarly issued multiple checks by Defendants' Companies, notwithstanding that they too had only been hired by one of Defendants' Companies.

45.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

46.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to

provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members.

47.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek due to paying a fixed salary and due to time shaving, in violation of the FLSA and NYLL

48.     Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notice to Plaintiff and Class members as required under the NYLL

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements to Plaintiff and Class members as required under the NYLL, as the wage statements did not accurately reflect the number of hours worked by employees.

50.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

51.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

52.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

53.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

54.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

55.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime rate to for their hours worked over forty hours a week due to a fixed salary and time shaving.

56.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

57.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

58.     Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under FLSA.

59.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

60.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including unpaid overtime, due to a fixed salary basis; unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

## COUNT II

## VIOLATION OF NEW YORK LABOR LAW

61.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

62.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

63.     At all relevant times, Defendants had a policy of improperly compensating Plaintiff and Class Member on a fixed salary basis.

64.     Defendants violated Plaintiff's and Class members' rights by failing to pay overtime wages for hours worked in excess of forty per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay due to a fixed salary and time shaving, in violation of the NYLL.

65.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with wage notice, at date of hiring and annually thereafter, as required under the NYLL.

66.      Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with proper wage statements as required under the NYLL. Defendants provided fraudulent wage statements that failed to accurately reflect the number of hours worked and the proper compensation for Plaintiff and Class members.

67.     Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages, including overtime, due to a fixed salary; unpaid wages, including overtime, due to time shaving;  reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**
**CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS**
**UNDER 26 U.S.C. § 7434(a)**

68.     Plaintiff realleges and incororates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

69.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

70.     By failing to provide Plaintiff and Class members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

71.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

72.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

**COUNT IV**

**BREACH OF CONTRACT**

73.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

74.     "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits

of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

75.     When Plaintiff and Class members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

76.     Defendants breached this duty when they decided to pay Plaintiff and Class members in cash and not file proper W-2.  As a result, Plaintiff and Class members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT IV

## UNJUST ENRICHMENT

77.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

78.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

79.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

80.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members respectfully requests that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.   A declaratory judgment that the practices complained of herein are unlawful under 26 U.S.C. § 7434 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class members;

c.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.   An award of unpaid wages, including overtime, due to a fixed salary due under the FLSA and NYLL;

e.   An award of unpaid wages, including overtime, due to Defendants time shaving policy due under the FLSA and NYLL;

f.   An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek, due under the FLSA and NYLL;

g.   An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the FLSA;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the NYLL;

j.   An award of five thousand dollars in statutory damages to Plaintiff and each Class member under 26 U.S.C. § 7434;

k.   Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class members' retirement through FICA contributions;

l.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

m.   Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

n.   Designation of this action as a class action pursuant to F.R.C.P. 23;

o.   Designation of Plaintiff as Representative of the Class; and

p.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: January 10, 2023

Respectfully submitted,

By:  /s/ *CK Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th
FloorNew York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*